UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY A. VARNER, | ) |
| | ) |
|       Petitioner, | ) |
| | ) |
|       v. | )   Civ. Action No. 14-650 (RMC) |
| | ) |
| UNITED STATES | ) |
| PAROLE COMMISSION *et al.*, | ) |
| | ) |
|       Respondents. | ) |

MEMORANDUM OPINION

Petitioner Larry A. Varner is a parolee under the supervision of the United States Parole Commission. In this action for a writ of *habeas corpus*, Mr. Varner challenges the calculation of his good-time credits under District of Columbia law. He asserts that given the correct credit, his sentence would have expired long ago, on April 10, 2007.[1] The Commission's documentation establishes otherwise. Accordingly, Mr. Varner's petition will be denied for the reasons explained below.

I. BACKGROUND

The Superior Court of the District of Columbia sentenced Mr. Varner on June 8, 1984, to a prison term of ten to thirty-years for second-degree murder. On October 21, 1993, Mr. Varner was released from a federal correctional facility to parole supervision, where he was to

---

[1] Although this action is captioned: "Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241," Mr. Varner also seeks monetary damages under 42 U.S.C. § 1983. *See* Pet. at 2. Because a judgment in Mr. Varner's favor would necessarily imply the invalidity of the parole term, the § 1983 claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Harris v. Fulwood*, 611 Fed. Appx. 1, 2 (D.C. Cir. 2015) (per curiam) (explaining that "section 1983 . . . claims are not cognizable unless and until [the prisoner] meets the requirements of *Heck*, 512 U.S. at 486-87" by invalidating the challenged detention in an appropriate proceeding).

remain until October 9, 2018.  On October 14, 1998, the Commission issued a parole violator warrant, which was executed by Mr. Varner's arrest on November 13, 1998.[2]  Following a preliminary interview conducted seven days later, Mr. Varner was released and reinstated to parole supervision.

On January 16, 2002, Mr. Varner was "released from active supervision," but he remained subject to the Commission's authority pursuant 28 C.F.R. § 2.97, until the expiration of his maximum or full-term sentence on October 9, 2018.  Resp't's Ex. 8 [Dkt. # 16-1].  In the order approving "inactive parole/mandatory release supervision," the Commission waived the previously imposed parole conditions "except the condition that [Mr. Varner] violate no law or engage in conduct which might bring discredit to the parole system, under penalty of withdrawal of the order of release or possible revocation by the . . . Commission."  *Id*.  The order made clear that Mr. Varner was  "in no way" released "from the custody of the Attorney General or the jurisdiction of the U.S. Parole Commission" before the expiration of his sentence, and that the Commission maintained its authority to resume parole supervision, impose special conditions, and revoke parole.  *Id*.

Following notification in December 2006 that Mr. Varner had been charged with bank fraud and theft from a federal program, the Commission withdrew the foregoing order and returned Mr. Varner to active parole supervision on January 26, 2007.  Mr. Varner was convicted on the theft charge and sentenced on August 24, 2007, to a prison term of six months, which he served to expiration.  In November 2007, the Commission issued a parole violator warrant based on the theft conviction; the warrant was executed by Mr. Varner's arrest on April 14, 2008.

---

[2]  The U.S. Parole Commission assumed responsibility over D.C. Code offenders in August 1998 as a result of the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105–33, 111 Stat. 712, 734-37 ("Revitalization Act"), codified at D.C. Code §§ 24–101–142.

Following a parole revocation hearing on July 15, 2008, the Commission revoked Mr. Varner's parole, and it rescinded more than fourteen years of credited time he had spent on parole—from October 21, 1993 to April 14, 2008 ("street-time credit").  Mr. Varner was released to parole again on November 14, 2008, where he was to remain until the expiration of his re-calculated maximum sentence date of March 16, 2033.

Following notification that Mr. Varner had failed to submit monthly supervision reports and to report to his parole officer, the Commission issued a parole violator warrant in April 2012, which was executed by Mr. Varner's arrest on October 28, 2013.  The following day, Mr. Varner admitted to the charges at a probable cause hearing.  In November 2013, Mr. Varner entered into an agreement where he accepted responsibility and waived his right to a revocation hearing upon the Commission's approval of his participation in "the Short-Term Intervention for Success pilot project."  Resp't's Ex. 20.  Mr. Varner agreed to "special drug aftercare" as an additional condition of supervision.  *Id*.  Pursuant to the agreement, the Commission revoked Mr. Varner's parole, rescinded the time from March 8, 2012 to October 27, 2013, that he had spent on parole, and set a re-parole date of February 27, 2014, after Mr. Varner's service of four months' imprisonment.  Mr. Varner was released to parole on February 27, 2014, where he was to remain until the expiration of his re-calculated maximum sentence date of November 2, 2034.  Mr. Varner was arrested yet again on a parole violator warrant issued on October 22, 2014.  Following a hearing in December 2014, Mr. Varner's parole was revoked and a re-parole date was set for April 21, 2015, after his service of six months' imprisonment.  Mr. Varner was credited for the time spent on parole; thus, his November 2, 2034 full-term date remains.

In the instant petition filed in April 2014 while on parole, Mr. Varner claims that during his incarceration from June 6, 1984 to October 12, 1993, he earned "Statutory Good Time credits at a rate of ten (10) days per month [and] Extra Good Time credits" for completing

3

educational and vocational programs and for outstanding work performance. Pet. ¶¶ 3-5. In a letter to the Commission dated August 4, 2005, Mr. Varner requested review under the "Good Time Credits Act of 1987 and other applicable [D.C.] laws" of his "parole status for eligibility of termination of my parole." Pet. Ex. 2. The Commission was "unresponsive"; thus, Mr. Varner submitted a second request dated March 4, 2006, adding that he had "accumulated enough good time credits for immediate termination of my parole." Pet. ¶ 7 and Ex. 3. Mr. Varner submitted a third request dated January 17, 2007, and a fourth and final request dated March 23, 2007. In the final letter, Mr. Varner stated: "if you fail to respond by April 10, 2007, I will conclude that you consent to the termination of my parole." Pet. Ex. 5.

## II. DISCUSSION

District of Columbia prisoners are entitled to habeas corpus relief if they establish that their "custody [is] in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Varner has made no such showing.

In contrast to Mr. Varner's assertion that his parole terminated on April 10, 2007, the record establishes that he has been under the Commission's authority continuously since October 1993, when he was first released to parole supervision from a federal correctional facility. Mr. Varner will remain under the Commission's authority until November 2, 2034, at the earliest. Therefore, the Commission acted well within its authority when it issued a parole violator warrant in 2007, and when it revoked Mr. Varner's parole and rescinded his street-time credit in 2008. *See Herndon v. U.S. Parole Comm'n*, 961 F. Supp. 2d 138, 142 (D.D.C. 2013) (finding "in accordance with the holdings of numerous prior cases in this district . . . that upon each of petitioner's parole revocations [prior to 2009], the number of days he spent on parole was properly rescinded and, thus, no longer counted towards the service of his prison term") (citation and internal quotation marks omitted); *Dews v. Waldern*, 590 F. Supp. 2d 42, 44

4

(D.D.C. 2008) (concluding that "upon each of Mr. Dews's parole revocations, the number of days he spent on parole was lawfully rescinded") (citing *Jones v. Bureau of Prisons*, 2002 WL 31189792, *1 (D.C. Cir., Oct. 2, 2002) (per curiam)).

In addition, any credits Mr. Varner may have earned for good behavior while incarcerated served only to reduce the time toward his parole eligibility date. As this Court has explained:

> The application of good time credit neither advances [a prisoner's] full-term date nor otherwise hastens the expiration of his maximum sentence. Rather, "[g]ood time credits operate to allow a prisoner to become eligible for release earlier than otherwise authorized by the sentence he received, to advance an inmate's eligibility date for release on parole and to decrease an inmate's mandatory release date. . . . When a prisoner's parole is revoked, he "serve[s] the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him *after his return to custody*," and "[f]or the purpose of computing commutation for good conduct, the remainder of the sentence originally imposed shall be considered as a new sentence." D.C. Code § 24-406(a). Upon an offender's subsequent release on parole, he "remain[s] in the legal custody and under the control of the Attorney General of the United States or his . . . representative until . . . [t]he expiration of the maximum of the term . . . specified in his . . . sentence without regard to good time allowance." D.C. Code § 24-404(a).

*Ramsey v. Faust*, 943 F. Supp. 2d 77, 82 (D.D.C. 2013) (alterations and emphasis in original) (citations omitted)).

Finally, Mr. Varner has not cited a statute, regulation, or case to support his conclusion that his parole automatically terminated on April 10, 2007, simply because the Commission failed to act on his ultimatum. The subsequent parole revocation proceedings beginning in November 2007 directly contradict any such notion.

## CONCLUSION

For the foregoing reasons, the Court finds no grounds for issuing the writ of *habeas corpus* and thus denies Mr. Varner's petition. Consequently, Mr. Varner's claim under

42 U.S.C. § 1983 for monetary damages is dismissed without prejudice, in accordance with *Heck v. Humphrey*, 512 U.S. 477 (1994).  A separate order accompanies this Memorandum Opinion.


Date:   April 26, 2016                             _____/s/_____
                                                   ROSEMARY M. COLLYER
                                                   United States District Judge